IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

EDWARD G. SAUNDERS,          )
       Petitioner,         )     Civil Action No. 7:21cv00079
                    )
v.                      )     MEMORANDUM OPINION
                    )
HAROLD W. CLARKE,          )     By: Michael F. Urbanski
       Respondent.        )     Chief United States District Judge

Edward G. Saunders, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2012 conviction for abduction with intent to defile in violation of Virginia Code § 18.2-48.  The respondent has filed a motion to dismiss, alleging that the petition is untimely, among other defenses.  After reviewing the record, the court concludes that the respondent's motion must be granted, and Saunders' petition must be dismissed as time barred.[1]

## I.

On June 20, 2011, Roanoke City Police arrested Saunders for the forcible rape of N.V.F., his neighbor, on June 17, 2011.[2] Following a preliminary hearing on July 21, 2011, the case was certified to the grand jury, which issued an indictment against Saunders on August 1, 2011, charging him with forcible rape, in violation of Virginia Code § 18.2-61.

---

[1] Because this case is time-barred, Saunders' motion for evidentiary hearing, motion for discovery, motions for subpoenas duces tecum, and motion for grand jury transcripts will be denied as moot.

[2] The actual date of the offense,  June 12, 2011, was corrected on the subsequent indictment. See Roanoke City Circuit Court Record, No. CR11001174-00 (hereafter, CCR) at 24. Page numbers are typed in the lower right corner of each page in the record.

Although bond was set, Saunders was unable to post bail, and he remained incarcerated. The court appointed an attorney from the Public Defender's Office to represent him.

During pre-trial investigation, substantial medical records revealed that N.V.F. had a long history of mental illness, including bipolar disorder, and a childhood marred by sexual abuse and molestation. She had not been taking her medication for some time before the events on June 12, 2011. The defense filed a motion under the rape shield statute, requesting leave of court to introduce much of this evidence, including that N.V.F. told the forensic nurse examiner that her mother allowed people to use her in exchange for drugs. CCR at 761 – 764. On January 17, 2012, the trial court denied the defense motion, based upon the Commonwealth's agreement that the forensic nurse examiner would not give opinion testimony on the complainant's emotional condition and would not testify about N.V.F.'s suicidal ideation. Id. at 789 – 790.

Although Saunders had consistently maintained that his sexual encounter with N.V.F. was consensual, two days after the hearing on the rape shield motion, he entered an agreement with the Commonwealth, under which the Commonwealth would amend the warrant to charge abduction with intent to defile instead of rape.[3] Saunders would plead no contest to the abduction charge, and the parties agreed on a sentence of 45 years, all suspended except for seven months (time served), conditioned upon successful completion of five years' probation and other conditions. Forty years of the suspended sentence would

---

[3] The charge on which Saunders was originally indicted, rape, carried a sentencing range of five years to life. Va. Code § 18.2-61. The abduction charge carried a sentencing range of twenty years to life, with a requirement that a court imposing a sentence less than life must include a suspended forty-year sentence for the remainder of the defendant's life. Va. Code § 18.2-48.

be suspended for the remainder of Saunders' life, as required by Virginia Code § 18.2-48.  Id. at 782.

At the plea hearing on January 19, 2012, the Commonwealth summarized its evidence as follows:

> [I]n June of 2011, Ms. [F] was living . . . in the City of Roanoke. In that same time period Mr. Saunders was living with his family a few houses down from her.  On June 11th Ms. [F] hosted a child's birthday party at her home that day.  When the party was over, adults continued to stay around and kind of hang out and play cards.  And Mr. Saunders would have been invited to her house for both the party and to continue with the adult get-together.  Ms. [F]'s testimony would be that Mr. Saunders was in and out of her house that day, that he was an invited guest, that he did play cards with them.  There was some drinking going on at the house.  And Ms. [F] would have testified that she did have several drinks herself that day and evening.
>
> As the night went on there was (sic) people that left her house; there were a number of people that stayed at her house and were spending the night.  It was early morning hours when one of Ms. [F]'s guests was leaving to go meet a ride or a friend at the end of the road that couldn't find Ms. [F]'s road.  Ms. [F] walked with that friend down the street.  And Mr. Saunders had already left and gone home to his house at that time, but he was out on the front porch.  Her testimony would be that Mr. Saunders called out to Ms. [F] and that she responded.  He offered her some Hennessy and she accepted.  She left her friend and went with Mr. Saunders into his home.
>
> Her testimony would be that she sat on the edge of the couch where there was a child asleep and Mr. Saunders went to get the drink.  He came back and he did not have the drink.  At that time he came toward her, I believe she would characterize it as something about a lunge at her, licking and kissing and licking on her neck and pulling at her clothing.  Ms. [F] initially thought that he was playing around with her and she was pushing him off and telling him to stop playing.  I believe the testimony would be that he pulled onto the floor (sic).  And at that point she no longer thought he was playing with her.  He placed his hand on her chest and held her to the floor while he was able to get her pants and

3

underwear pushed down. The testimony would be that they did not come off, but they were pushed down below her private area. Ms. [F] would testify that Mr. Saunders did place his penis into her vagina and began thrusting into her.

She would testify that prior to this and during this she was telling him to stop, that she believed that she was making a lot of noise though the little girl on the couch did not wake up. And no one else who was at home at the time appeared to any (sic) of her cries for help. Ms. [F] isn't really clear on the exact amount of time that this went on, other than that to her it felt like it was a really long time. There was a knock on the front door. And Ms. [F] would testify that Mr. Saunders got up at that point enough to where she was able to get out from under him and pull her clothes back up and run to the back door where she ran out the back door and ran down to her home.

. . . .

When she ran to her home there were a number of people staying over sleeping, most of which were children. But she woke one of her friends up and told her what had happened with Mr. Saunders. She and that friend then took a cab to Roanoke Memorial Hospital arriving somewhere around 4:00 in the morning. When they arrived at Roanoke Memorial Hospital there was not a forensic nurse on call at the time to see Ms. [F]. And there was some confusion about whether or not she could be transported to another hospital. She obviously did not have reliable transportation herself to get to another hospital at that point. They gave her the option of coming back when the forensic nurse was there later in the day and she did choose that option. She did make it back later. Another friend took her later that evening. They gave her instructions not to bathe and not to change her clothes. And she did abide by those instructions. She was seen by the forensic nurse, Melissa Harper. Ms. Harper did an examination, the internal examination, and there were samples collected and they were sent to the lab. The samples did come back that they could not exclude Mr. Saunders as being the contributor[4] to the DNA that was taken from inside of Ms. [F].

---

[4] The certificate of DNA analysis states: "The probability of randomly selecting an unrelated individual with a DNA profile matching that developed from the sperm fraction of the. . . sample . . . is 1 in greater than 6.5 billion (which is approximately the world population) in the Caucasian, Black and Hispanic populations."

On her initial trip to the hospital Ms. [F] had talked to one of the Roanoke City Police Officers and he got her version of what happened. Additionally she had told her version later to Ms. Harper. The only thing that she added with Ms. Harper was that at some point that Mr. Saunders had also placed his penis in her mouth. Her explanation was that (sic) for not telling that to the officer was that she was embarrassed to tell him at the time, and finally did tell the forensic nurse.

Detective Young with the Roanoke City Police followed up. She did end up obtaining warrants for Mr. Saunders for rape. Mr. Saunders turned himself in a couple of days after those warrants were taken out. I believe he had been in contact with family and knew that they were in place. And he turned himself into Officer Eric Carr of the Roanoke City Police Department. At the time when he turned himself in I believe Mr., the evidence would be that Mr. [F] (sic) was with a female. So Officer Carr took Mr. Saunders aside to tell him what he was charged with so he would not have to tell him in front of the female. When the female asked what was going on, Mr. Saunders in front of the Officer made statements that had, something to the effect that he had allowed a big girl to give him head and explained a little more of what had happened at that time.

. . . .

Your honor, the Commonwealth would submit that this all took place here in the City of Roanoke and that Ms. [F] would identify Mr. Saunders as the person that she had had the encounter with in his home. We did come to the plea agreement, which is below the guidelines. That has been discussed with Ms. [F] as well. And Your honor, given the risk of litigation and the issues before trial, the Commonwealth would ask that you accept the agreement, Your honor.

CCR at 895 – 900.

The court asked defense counsel if that was the case against Mr. Saunders, as she understood it. She replied, "That is the evidence that we expected them to present. We had obviously evidence to present as well, but in light of the risks of litigation . . ." Id. at 900. The trial court noted his awareness that the defense evidence included consent and that

5

there were issues with the complainant's stability and credibility as a witness, and after a thorough colloquy, intended to determine if Saunders' decision was knowing and voluntary, the court accepted the plea, even though the active sentence to be imposed was substantially below the guidelines.[5]  Id.

Less than three weeks later, on February 8, 2012, the trial court (with a different judge presiding) heard evidence on Saunders' motion to withdraw his no contest plea.  On direct examination by his public defender, the same attorney who had been representing him throughout, Saunders gave several reasons for wanting to withdraw the plea:

1.  He had not known the strength of his defense when entered his plea.  Id. at 908.

2.  He had not known the strengths and weaknesses of the prosecution's case.  Id.

3.  When originally offered abduction instead of rape, he was told that he would not have to register as a sex offender, but then was told he did have to register (before he entered his plea).  Id. at 908 – 909.

4.  His lawyer first presented him with the plea offer at the jail on January 19, the day before his trial was scheduled to begin, and said to him "your mom is downstairs and she thinks you should take the plea.  She is sick and needs you home to take care of her."  Id. at 909.  His mother later denied saying that he should take the plea and that she needed him to take the plea so he could take care of her.  Id.

5.  After Saunders was released from jail, the gentleman that Ms. F was walking with before going to Saunders' home on June 12, 2011, Tommy, came to visit

---

[5] The Virginia Sentencing Guidelines recommended an active sentence between 7 years, 1 month and 19 years, 4 months, with a midpoint of 14 years, 3 months.  CCR at 785.

Saunders, asking why no one had called him to tell him the trial was off, that he

had sat there all day waiting on the case to be called January 20. <u>Id.</u> at 910.

6. Until that time, Saunders did not know that this witness had been located and

contacted or that he was present to testify for Saunders.  His testimony would

have been that Saunders was not on the porch that evening and never called Ms.

F to come over; rather, Ms. F said she was going over to Saunders' house because

she wanted some type of sexual encounter with Saunders.  <u>Id.</u>

7. His first opportunity to review the discovery in his lawyer's file was February 2,

2012, after he had been released from jail following his plea, conviction, and

sentence. <u>Id.</u> at 909 – 910.

8. Although he asked for the discovery several times, the only document he had ever

seen was a copy of the preliminary hearing transcript. Then, the day before trial,

he was offered the plea agreement.  He was scared for himself and for his mother,

and he was in the dark about the strength of his defense. <u>Id.</u> at 911 – 912.

9. When he requested and received a copy of the entire file from his lawyer on

February 2, 2012, he found the following items that he had never previously seen

nor known about: Photos of the crime scene, witness statements, and medical-

forensic statements. <u>Id.</u> at 914.

Saunders reiterated repeatedly that he did not commit the crime, and once he

received and reviewed the information on his case, after he was out of jail, he believed that

he had a strong chance of a successful defense. <u>Id.</u> at 909, 912, 913, 914.  Following

Saunders' statements, the judge asked if Saunders remembered being questioned by the

7

court, under oath, when he entered his plea, and if he was trying to be truthful that day.  In particular, the court asked if Saunders remembered saying he was satisfied with his attorney. Saunders acknowledged answering questions under oath and denied any intent to mislead the judge with his answers.  He also noted that he was afraid of adverse repercussions if he said anything negative about his attorney at that time.  Id. at 915 – 916.  The judge asked Saunders what, specifically, was the manifest injustice that should allow him to withdraw his plea.  Saunders responded:

> Me having the knowledge of the preparation and the progress of my defense so that I would be able to make a fair decision whether to take a plea or not to take a plea.  For me take (sic) a plea and me not knowing anything about my defense, then my life is on the line.

Id. at 929.  The court emphasized that a lawyer with legal training and experience was in a far better position to evaluate the strength of a case than any layperson, and that it seemed reasonable for a client to be satisfied with relying upon what his attorney told him about the risk of going to trial.  At any rate, the judge did not see any manifest injustice and stated that Saunders' arguments did not make sense to him.  Id. at 917 – 931.

On cross-examination by the Commonwealth Attorney, Saunders indicated that he knew he had a defense, but denied that he had discussed defenses with his attorney.  Id. at 932 – 934.  Saunders knew his trial was scheduled for January 20, 2012, but he did not know he had a hearing on January 17 until the deputies woke him at the jail to get ready for court. He thought his trial had been moved up.  He was present for the January 17 hearing but did not understand what was going on.  He did understand what was happening at the plea hearing on January 19.  Other than his own version of events and complainant's testimony at

the preliminary hearing, Saunders did not know anything about the facts of the case that

would be presented by the Commonwealth or by his own attorney.  Id. at 134 – 136.

In denying Saunders' motion to withdraw his plea, the trial court noted that he

believed that Saunders was sincere but deluded in his understanding of criminal and

procedural law, and that there was no manifest injustice to correct.  Saunders appealed to the

Court of Appeals of Virginia, which affirmed the trial court's denial of the motion to

withdraw his plea.  Saunders v. Commonwealth, No. 0292-12-3 (Va. Ct. App. July 18, 2012)

(per curiam).  At the outset the Court of Appeals noted that a motion to withdraw a plea of

guilty or no contest must be filed before sentence is imposed under Virginia Code § 19.2-

296, unless necessary to correct a manifest injustice.  To determine if manifest injustice is

present, the court must look to the record for any affirmative evidence of innocence or lack

of a criminal offense.  A litigant must show that an injustice *has* occurred, not merely that an

injustice "*might* have occurred." Saunders, No. 0292-12-3, slip op. at 2 (emphasis in original)

(quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)).

The Supreme Court of Virginia refused Saunders' petition for appeal on December 13, 2012,

and denied his petition for rehearing on March 8, 2013.  Saunders did not file a petition for

certiorari in the United States Supreme Court.[6]

In December 2013, a grand jury for the Circuit Court of the city of Roanoke issued a

direct indictment against Saunders for a new offense.  A jury convicted Saunders of the new

charge on May 20, 2014.  Thereafter, Saunders was charged in June 2014 with violation of

---

[6] The same attorney represented Saunders throughout the case, at his plea hearing, his motion to withdraw the plea, and his direct appeals.

the terms of his probation on the January 2012 abduction conviction. Following a revocation hearing on March 4, 2015, the court imposed the full 40-year suspended sentence on Saunders.  CCR2[7] at 72 – 73.  The Virginia Court of appeals denied Saunders' appeal of the revocation and sentence on October 23, 2015, and denied his petition for rehearing on November 24, 2015.  See Saunders v. Commonwealth, No. 0596-15-3 (Va. Ct. App.).  His appeal to the Supreme Court of Virginia was procedurally dismissed on December 2, 2016. Saunders v. Commonwealth, No. 160497 (Va. Dec. 2, 2016).

The month after Saunders was charged for probation violation, Saunders filed a habeas petition in this court, pursuant to 28 U.S.C. § 2254, on July 30, 2014, alleging violation of his right to effective assistance of counsel in the case that resulted in his conviction for abduction with intent to defile.  Because no state habeas had yet been filed, and thus Saunders had not fully exhausted his state court remedies, this court dismissed that petition without prejudice.  Saunders v. Commonwealth, No. 7:14cv00395 (W.D. Va. Oct. 15, 2014).

Thereafter, on March 3, 2016, Saunders filed a habeas petition in the Roanoke Circuit Court, challenging his conviction of January 19, 2012, based on ineffective assistance of counsel, namely inducing him to enter a plea agreement based on concerns about his mother's health without informing him of the weaknesses of the prosecution's case.  On November 1, 2016, the Circuit Court dismissed the habeas petition as untimely, noting that the statute of limitations for challenging the conviction expired March 8, 2014.  Saunders v.

---

[7] CCR2 refers to the Circuit Court record of the probation violation case, No. CR11-1174R from the Roanoke City Circuit Court. Page references are to the typed page number in the lower right corner of each page.

Clarke, No. CL16-513 (Roanoke Cir. Ct. Nov. 1, 2016).  Saunders did not appeal this

decision to the Supreme Court of Virginia.

In February 2019, Saunders filed a motion to vacate the judgment of January 19,

2012, pursuant to Virginia Code § 8.01-428, which permits a trial court to vacate a judgment

at any time upon proof that the judgment is void, that is for lack of jurisdiction over the case

or because of extrinsic fraud.  In support of his motion, Saunders alleged:

    (1)  Ineffective assistance of counsel amounting to extrinsic fraud;

    (2)  Ineffective assistance of counsel for withholding exculpatory evidence;

    (3)  Ineffective assistance of counsel for allowing the Commonwealth to use perjured

        testimony as the factual basis for the no-contest plea; and

    (4)  Ineffective assistance of counsel for failing to relay a plea offer to the defendant.

The Circuit Court held that it had jurisdiction over the felony prosecution under Virginia

Code § 17.1-513 and that Saunders failed to prove extrinsic fraud, which consists of a false

representation of material fact, made knowingly and intentionally, with the intent to mislead,

upon which the defrauded person relies to his detriment, citing Peet v. Peet, 16 Va. App.

323, 327, 429 S.E.2d 487, 490 (1993).  In the context of a court proceeding, extrinsic fraud

prevents a fair presentation of the controversy to the court by figuratively or literally keeping

the unsuccessful party away from the court.  Id.  Finding that Saunders' claims were typical

ineffective assistance of counsel claims, appropriately litigated in habeas corpus cases, rather

than extrinsic fraud, the court noted that Saunders had already submitted an untimely habeas

petition which had been dismissed.  A motion to vacate cannot be used as a substitute or

alternative to a habeas petition.  Jones v. Commonwealth, 293 Va. 29, 53, 795 S.E.2d 705,

719 (2017).  See Saunders v. Commonwealth & Clarke, No. CL19-354 (Roanoke City Cir. Ct. July 24, 2019).  The Supreme Court of Virginia refused Saunders' petition for appeal on June 10, 2020, and denied his petition for rehearing on October 8, 2020.

Saunders then filed the current § 2254 petition on February 22, 2021, raising the following claims of ineffective assistance of counsel:

A.  Counsel lied about his mother's health to induce Saunders to enter a plea agreement;

B.  Counsel failed and refused to review discovery and investigation materials with him;

C.  Counsel allowed the Commonwealth to use perjured statements as the factual basis supporting the conviction, when the complaining witness had recanted part of her statement at the preliminary hearing; and

D.  Counsel failed to advise Saunders of an alternative plea offer, communicated to her the same date as the agreement Saunders ultimately signed, under which Saunders could have pled to the charge in the indictment and received a sentence of 20 years with all but 7 months suspended.

## II.

Under 28 U.S.C. § 2244(d)(1), a petitioner has one year in which to file a federal habeas corpus petition.  This statute of limitations runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws

of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A federal district court reviewing a § 2254 petition is also limited by the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A), which requires a habeas petitioner to exhaust his claims in state court before his claims can be considered in federal court. To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This doctrine promotes the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. Coleman v. Thompson, 501 U.S. 722, 730–31 (1991). In this case, untimely exhaustion of Saunders' state remedies combined with untimely filing of his § 2254 petition require dismissal of the petition.

In most cases, subsection A is the applicable date on which the statute of limitations starts running. The judgment entered on his guilty plea became final when his direct appeals ended, or on the last date he could have requested further appeal. Saunders appealed his case all the way through the Supreme Court of Virginia, including a request for rehearing,

13

which was dismissed on March 8, 2013.  Thereafter, Saunders could have pursued an appeal to the United States Supreme Court, if he filed a petition within 90 days, but he did not do so.  Therefore, 90 days after the last decision from the Supreme Court of Virginia, or June 6, 2013, is the day his one-year statute of limitations started running.  Absent some other provision of law tolling the statute, June 6, 2014, was the last day for Saunders to file a timely § 2254 petition in federal court under subsection A.  The petition in this case was not filed until February 22, 2021, more than six and a half years later.

Saunders has not alleged that subsections B, C, or D should apply, nor do any facts in the record suggest that they apply.  No government action prevented him from filing his habeas before June 6, 2014.  His claims of ineffective assistance of counsel were not recently recognized by the United States Supreme Court; rather, the Court announced clear standards for ineffective assistance of counsel claims in 1984 in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Finally, Saunders was aware of the factual basis for his ineffective assistance of counsel claims by February 8, 2012—long before the judgment became final—when he moved to withdraw his plea.  Accordingly, the date calculated under subsection A, June 6, 2014, is the date on which the time to file his habeas petition expired, absent some other statutory or equitable tolling.

Three possible ways exist for a petitioner to avoid the harsh effect of the statute of limitations:  Statutory tolling, equitable tolling, or actual innocence.  As discussed more fully below, none of these will save Saunders' untimely federal petition in this case.

### A. **Statutory Tolling**

Section 2244(d)(2) tolls the statute of limitations during the time in which a "properly filed application for State post-conviction or other collateral review is pending." A state habeas petition does not delay the start of the limitation period; rather, the period starts running when the state judgment becomes final, but the clock is stopped when a state habeas proceeding is properly filed. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). When the state habeas is no longer pending, the clock starts running again, picking up where it left off; it does not start over. Id. If the statute has already fully run before the state action is filed, the state collateral proceeding can no longer toll the federal filing period, as there is nothing left to toll; the state action does not "revive" the one-year limitation period. Wahl v. Kholi, 562 U.S. 545, 547 (2011).

Saunders did not file a state habeas petition until March 3, 2016, nearly two years after the federal statute of limitations had already expired. Even if the state habeas had been properly filed, there was nothing left to toll on the federal statute of limitations. Further, Saunders' state habeas was not "properly filed," because the state considered the petition untimely. An untimely petition in state court is not "properly filed." Artuz v. Bennett, 531 U.S. 4, 11 (2000). If the state petition is considered untimely under state law, "'that is the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005). Further, Saunders failed to appeal the Circuit Court's dismissal of the habeas petition, so the matter still had not been presented to the state's highest court.

Apparently realizing that failure to present the claims to the state's highest court might remain a problem, Saunders filed a motion to vacate his conviction in the Roanoke

15

City Circuit Court in February 2019, raising substantially the same issues raised in the current petition.  When the Circuit Court dismissed his motion, Saunders appealed to the Supreme Court of Virginia, which refused the appeal and denied rehearing, as discussed previously.

Even if the court considered the motion to vacate a post-conviction proceeding for exhaustion purposes, that motion was filed nearly five years after the federal statute of limitations had run.  Just as with his 2016 state habeas petition, the motion to vacate was filed when there was nothing left to toll and could not revive the statute of limitations on his claims.  Wahl, 562 U.S. at 547; Harris, 209 F.3d at 327.

For the reasons stated, statutory tolling does not save Saunders' untimely petition.

**B.  Equitable Tolling**

The United States Supreme Court has recognized a narrow exception for equitable tolling if the petitioner has pursued his rights diligently and some extraordinary circumstances prevented his timely filing.  Holland v. Florida, 560 U.S. 631, 636, 649 (2010). Saunders has not met either criterion.  He has offered no explanation for the delay in filing, much less an explanation that would be considered extraordinary.  Diligence implies constant, timely effort to accomplish something, not intermittent efforts.  Review of the records reflects that Saunders took no action to challenge the 2012 conviction after the Supreme Court of Virginia dismissed the petition for rehearing on his direct appeal.  After March 8, 2013, he did not petition the United States Supreme Court for certiorari; he did not file a state habeas petition challenging the conviction based on ineffective assistance of counsel. The first time he attempted to collaterally attack the conviction was the month after his arrest for probation violation, when he filed a § 2254 petition in this court on July 30,

16

2014.  The court dismissed that petition because ineffective assistance of counsel had not been raised before the highest state court or any other state court in Virginia, rendering his claims unexhausted.  Despite being advised that he needed to present his claims to the state court first, he waited another year and a half to file his state habeas claim alleging ineffective assistance.  That is not diligence.  Accordingly, equitable tolling is not appropriate in this case.

## C. <u>Actual Innocence</u>

In balancing "the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," the Court has recognized a "miscarriage of justice exception" to the statute of limitations when a litigant presents new evidence showing that, absent constitutional error, "no reasonable juror would have convicted" the defendant.  <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 393–95 (2013).  When a petitioner presents new reliable evidence, "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," the habeas court must consider the new evidence along with the trial evidence to decide whether, in the absence of constitutional error, petitioner likely would not have been convicted.  <u>Schlup v. Delo</u>, 513 U.S. 298 316, 324 (1995).  Or, as in the present case, when a defendant alleges that he entered into a plea agreement based on ineffective assistance of counsel, to show reasonable likelihood of a different outcome, the new evidence must demonstrate that rejection of the plea agreement would have been objectively reasonable.  <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372 (2010).

The problem Saunders encounters is that the evidence of ineffective assistance of counsel he offers is not new.  Evidence is new "only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."  Amrine v. Bowersox, 238 F.3d 1023, 1028 (8th Cir. 2001).  See also Hubbard v. Pinchak, 378 F.3d 341 (3d Cir. 2004); Hancock v. Davis, 906 F.3d 387, 390 (5th Cir. 2018), cert. denied, No. 18-940, 2019 WL 266857 (U.S. June 17, 2019); Rowe v. Clarke, No. 7:18CV00383, 2019 WL 4235240 (W.D. Va. Sept. 6, 2019) (noting that the Fourth Circuit has not addressed this issue); Ascue v. Clarke, No. 7:20CV00735, 2021 WL 4482974 (W.D. Va. Sept. 29, 2021).

None of the evidence argued by Saunders is new.  He made the same arguments in support of his motion to withdraw his guilty plea on February 8, 2012, albeit the facts were not argued as ineffective assistance of counsel, just as reasons he should be allowed to withdraw his plea agreement.  It does not matter whether he knew that the facts might support an ineffective assistance of counsel claim, as that is a matter of law. Ignorance of the law is not the same as being unable to discover facts.  The underlying facts upon which his ineffective assistance claims are based were known to him in a timely fashion, and thus are not "new acts" in support of an actual innocence claim.

Because Saunders has no new facts to support a claim of actual innocence, he cannot qualify for this very narrow exception to the statute of limitations.

### III.

For the reasons stated, Saunders' petition is untimely, and the untimeliness is not excused by statutory tolling, equitable tolling, or the actual innocence exception.

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability.  Fed. R. Gov. § 2254 Cases 11(a).  A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v McDaniel, 529 U.S. 473, 483–84 (2000).  In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right.  Gonzalez v. Thaler, 565 U.S. 134, 140–41 (2012).  Saunders has not made such showings in this case.

For the foregoing reasons, the court will grant respondent's motion to dismiss, dismiss the petition for a writ of habeas corpus, and deny a certificate of appealability.

**ENTER:**  This  3rd  day of February, 2022.

Michael F. Urbanski
Chief U.S. District Judge
2022.02.03 11:44:17 -05'00'

_____

Chief United States District Judge